In re Litigation of ESTATE OF GEORGIE MIRIAM WAIT, Deceased.
SYLVIA SUNDERLAND, Appellant, v. MATTIE W. BAILEY, MINNIE W. GILL, and ALICE WAIT, Appellees.—306 S. W. (2d) 345.

Western Division at Jackson. February 22, 1957.

Petition for Certiorari Denied by Supreme Court June 7, 1957.

Earl P. Davis, Memphis, for appellant.

Clarence Clifton, John B. Mack, Memphis, for appellees.

CARNEY, J. The appellant, Sylvia Sunderland, executrix and principal beneficiary under the will of Georgie Miriam Wait, deceased, appeals from an order of the Probate Court of Shelby County, Tennessee, which refused to admit said will for probate. The appellees are the next of kin of the deceased, Georgie Miriam Wait, and will inherit the estate of Miss Wait if said will is not admitted to probate. The estate consists of approximately $22,000 in personalty and a house and lot located in Memphis, Tennessee.

Said paper writing was on three pages partly typewritten and partly filled in in pen and ink and is as follows:

"Last Will and Testament

of

Georgie Miriam Wait

\* \* \* \* \* \*

"I, Georgie Miriam Wait, a resident of Memphis, Shelby County, State of Tennessee, being of sound and disposing memory do hereby make, publish and declare this to be my last will and testament, hereby

revoking all other and former wills or codicils to wills by me at anytime heretofore made. I request and direct and it is my will as follows:

## Item I

"I direct that all of my just debts, and the expense of my last illness and for my funeral and burial shall be paid from my estate by my Executor or Executrix as the case may be, hereinafter named, as soon after my death as may be practicable.

## Item II

"I do hereby give and bequeath to Anne C. Wait, widow, of my deceased brother Jonathon Wait, the sum of one ($1.00) dollar.

## , Item III

"I do hereby give, grant, convey, devise and bequeath all the real property which I may own or to which I am or may be in any way entitled to my friend of many years—Sylvia Sunderland.

## Item IV

"I do hereby give and bequeath all the rest, residue and remainder of my estate consisting of personalty only which I may own at my death or to which I am or may be entitled in any way to: To my cousins—Minnie Gill, Alice Wait and Mattie Bailey, I give $1.00 (one dollar) each, and the balance of my personalty including house furnishings to my dear friend Sylvia Sunderland.

## Item V

"I do hereby appoint Sylvia Sunderland Executrix of my will, and dispense with, and ask that she be not required to give any bond as such.

"Witness my hand in the presence of Leslie M. Cunningham and Mrs. Dock White who are requested to sign this, my last will, as witnesses, at Memphis, Tennessee, on this the 30th day of March, 1956.

"x Georgie Miriam Wait

"The above Georgie Miriam Wait, did on this the 30th day of March, 1956, declare to us the foregoing instrument to be her last will and testament, and called on us to witness same, and did in our presence and sight, and each of us, sign her name thereto as and for her last will and testament, and we at her request, and in her presence and sight and of each other, sign our names as witnesses, this 30th day of March, 1956.

"Lessie M. Cunningham
"Mrs. Dock White           "

Those parts of the will which were filled in in pen and ink have been underscored.

The beneficiary, Sylvia Sunderland, at the request of the testatrix, completed in pen and ink Items III and IV of the will and also wrote her name as executrix in the first paragraph of Item V of the will. The testatrix was old and feeble and could not write very well. The beneficiary, Miss Sunderland, was not present at the time of the attempted execution of the will on March 30, 1956.

It is to be noted that the attestation clause appears in all things regular and indicates that the will was executed and witnessed in conformity with the provisions of T. C. A. sec. 32-104.

However, it developed from the testimony of the attesting witnesses in the proceeding to probate the will in common form that the testatrix, Miss Wait, had not signed the will at the time the two attesting witnesses signed it but that she signed it a day or two later. It is the contention of the appellant that the testatrix showed the will to the attesting witnesses and declared the same to be her last will; that she touched the pen to the will at the place indicated for her signature and made a mark sufficient in law to constitute her signature under the statute and that thereupon the two attesting witnesses at her request and in her presence and in the presence of each other signed their names thereto as attesting and subscribing witnesses to said will.

The two attesting witnesses are in substantial agreement as to most of the circumstances surrounding the attempted signing of the will by the testatrix, Miss Wait. However, they do differ somewhat in just what the testatrix said at the time.

Both attesting witnesses were neighbors of the testatrix and testified that they were requested by Miss Wait to come to her home and to witness her will.

One of the attesting witnesses, Mrs. Dock White, testified that Miss Wait, the testatrix, was sitting at a table and that she placed a pen to the will on the table as if to sign and her hand was shaking and she said, "Oh, I can't write; you all go ahead and sign it and I will sign it later when I can control my hand."

Further, Mrs. White testified that she could not see whether Miss Wait had written anything or any part of her signature on the line because when Miss Wait handed the will over to the two witnesses she had placed a piece of paper over the line indicated for the signature of the testatrix. A few days later she was in the home of Miss Wait and the testatrix showed her the will which had been signed saying, "At last I got to where I could control my hand and I signed this will."

The other attesting witness, Mrs. Cunningham, corroborated the testimony of Mrs. White to the effect that the testatrix was sitting at the table and tried to write her name; that she was shaking and trying to write and that the pen was moving but that she did not know just exactly what, if anything, the testatrix had written at that time.

Mrs. Cunningham testified that she did not hear the testatrix say that she would sign the will later but that she did hear her say, "I am so nervous I can't sign it" and that she asked the two witnesses to go ahead and sign the will which they did.

Both of the witnesses were positive in their testimony that while they could not testify that Miss Wait had actually written anything on the signature line because the paper was placed over this line, yet they could not say that she had not actually made a mark on the signature line.

The judge of the Probate Court held that the proof was insufficient to establish that Miss Wait had executed the will in accordance with the provisions of T. C. A. sec. 32-104; i. e. (1) That Miss Wait herself had not signed the will in the presence of the two witnesses; nor (2) did

she acknowledge her signature already made; nor (3) did she direct that some other person sign her name for her.

It is the contention of appellant that since the witnesses testified that Miss Wait was actually attempting to execute a will and that she placed a pen to the paper that she thereby made some sort of a mark on the paper which was sufficient in law to constitute her legal signature.

Appellees contend, (1) that there was no evidence that Miss Wait intended to make a signature by mark; (2) that under the provisions of T. C. A. sec. 32-104 a signature by mark is not recognized and that therefore, the will would not be entitled to probate even if the proof were sufficient to show that the testatrix attempted to make a signature by mark on the paper writing.

Appellant relies upon the language of the Supreme Court in the case of Leathers v. Binkley, 196 Tenn. 80, 264 S. W. (2d) 561, 563, which was as follows:

"To protect the right of testamentary disposition of property, we must sustain a will as legally executed if it is possible to do so, Sizer's Pritchard on Wills, Secs. 384, 386 et seq.; 57 Am. Jur., Wills, Sec. 218. Compare: Ball v. Miller, 31 Tenn. App. 271, 214 S. W. (2d) 446."

However, in our opinion, the facts in the Leathers case were substantially different from the case at bar. The attesting witnesses in that case testified that they did not remember whether they signed before or after the testator. In the present case both attesting witnesses affirmatively testified that the testatrix did not sign the

will until after they had signed and that it was signed by her out of their presence. For that reason we think the decision in the Leathers case is not controlling of the case at bar.

In the case of Ball v. Miller, 1948, 31 Tenn. App. 271, 214 S. W. (2d) 446, the testatrix was in the hospital and had signed the will in the presence of two witnesses whom she had requested to witness her will. One of the witnesses, a doctor, had signed but before the other witness could sign, the testatrix suffered a coughing spell and the second attesting witness went to seek a nurse. The condition of the testatrix became considerably worse and the second attesting witness failed or neglected to sign the will before the death of the testatrix.

Prior to the execution of the Uniform Wills Act in 1941, now T. C. A. sec. 32-104, said will would have been entitled to probate as a will of personalty even though it would not have been sufficiently valid to devise real estate. The Court of Appeals, following the case of Fann v. Fann, 186 Tenn. 127, 208 S. W. (2d) 542, reannounced the rule that there is no difference in the requirements for the execution of a will bequeathing personalty and a will devising real estate. The Court of Appeals held in the Ball case that since only one witness had actually signed the will that it was not executed in compliance with the provisions of Code Section 8098.4, T. C. A. sec. 32-104, and therefore not entitled to probate as a will.

In the case of Eslick v. Wodicka, 1948, 31 Tenn. App. 333, 215 S. W. (2d) 12, the proof showed that the testator signed the will privately and subsequently acknowledged

his signature before both attesting witnesses. The attesting witnesses signed the will out of the presence of each other though they later were jointly in the presence of the testator and he thanked both of them for acting as subscribing witnesses. At this subsequent meeting the testator did not have the will with him though it had been actually signed by each subscribing witness in the presence of the testator prior to the meeting. In the Eslick case the Court of Appeals held that the failure of the attesting witnesses to sign the will both in the presence of the testator and in the presence of each other as required by Code Section 32-104 was fatal to the validity of the will and that the subsequent acknowledgement of their signatures in the presence of the testator and in the presence of each other was not authorized by the statute and ineffective to validate the will.

We do not find it necessary or proper for this court to rule whether or not a testator may legally sign a will by mark. A careful reading of the testimony of the attesting witnesses indicates clearly to us that the testatrix may have made a mark of some sort, either an initial or one or more letters of her signature, on the will but she clearly indicated that she did not consider such mark or marks to constitute her signature. In our opinion neither the testatrix nor the attesting witnesses understood the requirements of the statute that the testatrix must (1) signify to the attesting witnesses that the instrument is his will and then take one of three courses: (a) Himself sign the will or (b) acknowledge his signature already made or (c) at the direction of the testator and in the testator's presence have someone else sign the name of the testator to the document.

The statute is very clear that regardless which one of the three courses is pursued the act must be done in the presence of two or more attesting witnesses. We think the evidence clearly shows that on the day in question the testatrix had not signed the will or attempted to sign the will before the attesting witnesses were called to her home.

█ Further, we think the evidence shows that she complied with a portion of the statute by signifying to the attesting witnesses that the paper writing was her will and that she then set about to sign the will by writing her usual signature thereon; that due to her physical infirmity her hand shook so that she decided to defer her signature until a later date and asked the attesting witnesses to go ahead at that time and sign their names to the will which they did; that the testatrix did not consider that she had signed the will until after the attesting witnesses had signed the will and had left her presence. At some later date her hand became more steady and she did actually sign the will but not in the presence of either attesting witness though at a later date she did acknowledge her signature to one of the attesting witnesses.

There is simply no proof on which the Probate Court or this Court could find that the testatrix intended any mark she may have made on the paper as her signature. On the contrary, we think the overwhelming proof is that she did not intend any such mark to be her signature but that she intended to and did actually sign the will at some later date after the attesting witnesses had already signed it and were out of her presence. This the statute does not permit.

Therefore, we feel constrained to hold that His Honor, the Judge of the Probate Court of Shelby County, correctly held that the purported will of Miss Wait was not executed in accordance with the requirements of Code Section 32-104 and therefore, it is not entitled to probate and the assignment of error is overruled.

A decree will be entered affirming the judgment of the lower court and taxing the appellant and her surety with the costs of this appeal.

Avery, P. J. (Western Section), and Bejach, J., concur.