IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 12, 2024 Session

## SCOTT HENSLEY v. LAWRENCE SLATTERY, ET AL.

**Appeal from the Chancery Court for Jefferson County**
No. 17-CV-5        Telford E. Forgety, Jr., Special Judge[1]

_____

### No. E2023-01768-COA-R3-CV
_____

This is a property action involving the plaintiffs' years long pursuit to establish a right-of-way to landlocked property. The trial court dismissed the action for failure to prosecute. We now vacate the order of dismissal and remand for further hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and KRISTI M. DAVIS, J., joined.

W. Lewis Jenkins, Jr., Dyersburg, Tennessee, and F. Braxton Terry and T. Dillon Parker, Morristown, Tennessee, for the appellant, Scott Hensley.

Brian T. Mansfield, Sevierville, Tennessee, for the appellants, William Carl Gheesling and Laura Gheesling.

Matthew A. Grossman and Rebekah P. Harbin, Knoxville, Tennessee, for the appellees, Lawrence and Kathy Slattery, SoKno Properties, LLC, and Robert E. Johnson.

### OPINION

### I.    BACKGROUND

Scott Hensley owns two tracts of land located between the county lines of Jefferson and Sevier County. The property is landlocked by tracts owned by multiple parties and bounded on one side by Douglas Lake. Mr. Hensley's property currently has no access to

_____

[1] Sitting by designation.

utilities such as electricity, water, telephone, and cable. Mr. Hensley sought to run utilities across an existing private roadway named Douglas Bay Way, which connects to a public road, Flat Creek Road, at one end, and terminates near Kathy and Lawrence Slattery's property line. Douglas Bay Way is roughly a mile long and ends at the edge of the Slattery property about one hundred yards from Mr. Hensley's property.

On January 11, 2017, Mr. Hensley filed the instant action, seeking the court's establishment of a right-of-way or easement for ingress and egress and to run utilities to his property. Mr. Hensley named property owners affected by his proposed access, including Kathy and Lawrence Slattery, as defendants. The Slatterys, along with other landowners (collectively "Defendants"), moved to dismiss, claiming that the action must be filed in both Sevier and Jefferson counties. The trial court denied the motion but required Mr. Hensley to file in both counties. The actions were consolidated into one, with Jefferson County assuming jurisdiction. Defendants moved for dismissal again, alleging that the Tennessee Valley Authority ("TVA") was an indispensable party because the requested path would cross an existing flowage easement established by TVA. Mr. Hensley joined the TVA as requested. The TVA removed the action to federal court but later requested dismissal of the action, disclaiming any interest because the suggested routes did not actually cross the flowage easement as suggested. The Slatterys appealed, and in January 2020, the Sixth Circuit Court of Appeals affirmed the dismissal of the TVA as a party and remanded the action.

In April 2020, Laura and William Carl Gheesling were added as plaintiffs, having purchased property at issue in the action. The matter was set for trial before Chancellor Forgety in August 2021. Prior to the hearing, the Plaintiffs filed a motion to recuse Chancellor Forgety, citing his friendship with the Plaintiffs' land surveyor witness. Additionally, the Slatterys again moved for dismissal, claiming that some parties who held an interest in the proceedings were not properly served with process. The trial court denied the motion to recuse and ordered Mr. Hensley and the Gheeslings (collectively "Plaintiffs") to provide notice to all property owners owning any land situated between any public road and the Hensley property, as well as all lienholders having any interest in any parcel. The action was reset for hearing in August 2022.

Prior to the hearing date, a number of landowners who had no real interest and did not respond to pleadings were dismissed from the action. The parties then began settlement discussions and ultimately advised the court that a settlement had been reached, the terms of which were announced to the court but were not memorialized in writing. The parties agreed that Plaintiffs would provide $80,000 to the Slatterys in exchange for 2 acres of land "that abuts or otherwise has access to Douglas Bay Way" and that Defendants would convey "all rights, rights of way and easements . . . as it pertains to Douglas Bay Way."

On August 16, 2022, Defendants forwarded a proposed settlement agreement with an agreed order of compromise and dismissal. The terms provided in the written agreement

differed from the terms discussed. The Slatterys attempted to quitclaim the 2 acres of property, and the Defendants attempted to quitclaim "[12.5] feet on either side of the centerline of the right of way" on Douglas Bay Way. This allegedly contravened the terms of the settlement agreement, whereby the Slatterys agreed to convey the 2 acres via warranty deed and Defendants agreed to convey a 50 foot right of way via warranty deed.

During the pendency of the proceedings, Chancellor Forgety's term expired, effective September 1, 2022. Chancellor Ripley assumed the office. Plaintiffs moved for enforcement of the agreement, while the Defendants moved for dismissal of the action altogether, citing the continued delay in the proceedings. Despite the expiration of his term, Chancellor Forgety proceeded with a hearing, after which he held that an enforceable settlement agreement had not been reached. The court dismissed the action for failure to prosecute on October 20, 2022. Plaintiffs filed a motion to alter or amend.

During the pendency of the proceedings, Chancellor Ripley began to preside over the action. Mr. Hensley moved for Chancellor Ripley's recusal, citing statements he made in admiration of Chancellor Forgety. Chancellor Ripley recused himself, by order, entered on March 28, 2023, resulting in the Supreme Court's designation of Chancellor Forgety as a special judge pursuant to a standing order, entered on January 20, 2023. Plaintiffs moved again for Chancellor Forgety's recusal by filing a motion with the presiding judge of the Fourth Judicial District, who denied the motion, citing the Supreme Court's directive. Chancellor Forgety denied the motion to alter or amend, by order entered on November 13, 2023. This timely appeal followed.

## II. ISSUES

We consolidate and restate the determinative issues on appeal as follows:

A.     Whether Chancellor Forgety held the authority to rule in this action after having completed his term of office in August 2022.

B.     Whether Chancellor Forgety was disqualified from presiding over the action and ruling on the post-dismissal motions after his appointment as a special judge in January 2023.

C.     Whether the court erred in mandating the joinder of additional parties.

D.     Whether the court erred in finding that an enforceable settlement agreement had not been reached.

E.     Whether the court abused its discretion in dismissing this action without prejudice for failure to prosecute.

### III. STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

### IV. DISCUSSION

#### A. & B.

Plaintiffs maintain that Chancellor Forgety no longer held authority to preside over the action once his term of office expired on August 31, 2022. Plaintiffs deny any claim that they acquiesced to his continued authority. The record confirms that Plaintiffs' counsel questioned Chancellor Forgety's ability to preside over the action after the expiration of his term, to which Chancellor Forgety cited Tennessee Code Annotated section 17-1-304, which provides, in pertinent part, as follows:

(a)     Whenever any trial judge vacates the office of judge for any cause, [] the judge shall have and retain, as to cases pending before the judge, the trial of which has begun prior to the judge's vacation of office, all the powers in connection with the cases that the judge might have exercised therein, had the vacation of office not occurred.

(b)     The judge's powers in this respect shall not extend beyond [60] days from the date of such vacation of office.

(c)     The powers shall especially include, but shall not be limited to, the right to render judgments, to hear and determine motions for new trial, to grant appeals and to approve bills of exceptions.

Statutory interpretation presents a question of law which we review de novo, according no deference to the legal conclusions made by the trial court. *In re Estate of Stringfield*, 283 S.W.3d 832, 834 (Tenn. Ct. App. 2008). The record reflects that no trial had occurred prior to the expiration of Chancellor Forgety's term. Plaintiffs filed a condemnation action to secure the location of an easement by necessity. In such cases, the court may recognize that an easement is necessary but is not permitted to designate the location of the easement. Tenn. Code Ann. § 54-14-104, -107. Rather, a jury of view must be empaneled to designate the location of the easement and assess any corresponding monetary loss to the surrounding landowners. Tenn. Code Ann. § 54-14-107. This simply did not occur as a result of multiple delays in the action and the parties' settlement negotiations that ultimately

deteriorated at the time of the expiration of the Chancellor's term. Chancellor Forgety did not possess the requisite authority to dismiss the action in October 2022. However, Defendants argue, and we agree, that any issue pertaining to Chancellor Forgety's continued authority to preside was rendered moot by the Supreme Court's designation of Chancellor Forgety as special judge over this action by order, dated January 20, 2023.[2]

C.

Plaintiffs argue that the trial court erred in requiring joinder of numerous parties who held no interest in the outcome of the proceeding. Plaintiffs allege that their joinder resulted in a delay of the proceedings. Defendants respond that their joinder was necessary in the event that the easement crossed their property. While admittedly cumbersome, we cannot find error in the court's directive. Indeed, "should the report from the jury of view locate the easement on the land of a non-party, the report must be set aside and another jury of view appointed for reconsideration of the petition after that landowner and all other interested parties have been joined" before any relief may be granted. *Barge v. Sadler*, 70 S.W.3d 683, 690 (Tenn. 2002).

D.

Plaintiffs next assert that a binding settlement had been reached and that the trial court erroneously refused to enforce such settlement between the parties when written documents were admitted showing the terms. As previously stated, the record reflects that the parties agreed to the conveyance of 2 acres and an easement; however the parties disagreed as to whether such conveyances would be accomplished via warranty deed or quitclaim deed[3] and as to the width of the easement on Douglas Bay Way, Plaintiffs sought a 50 foot easement, while Defendants offered a 25 foot easement.

"A compromise and settlement agreement is merely a contract between parties to litigation and, as such, issues of enforceability of a settlement agreement are governed by contract law." *Environmental Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000). A contract, either written or oral, "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Higgins v. Oil, Chem. and Atomic Workers Int'l Union*, 811 S.W.2d 875, 879 (Tenn. 1991). If a contract for settlement is found to be valid, "[i]t is a universal rule in American jurisprudence that the courts will enforce settlement

---

[2] The Supreme Court directive pre-dates Chancellor Ripley's recusal order, entered on March 28, 2023. We find no appearance of impropriety, as suggested by Plaintiffs, in the Court's designation of Chancellor Forgety as special judge in the event of Chancellor Ripley's inability to preside over an action.

[3] Plaintiffs offered to acquiesce to the conveyances via quitclaim deed; however, Defendants rejected this conciliatory suggestion and maintained that they did not have a settlement agreement.

agreements." *Wallace & Wallace, Inc. v. Rosengreen*, C/A No. 688, 1987 WL 5336, at *2 (Tenn. Ct. App. Jan.16, 1987) (enforcing settlement agreement reached between parties even though agreement was not in writing and the court was merely informed of the agreement by counsel). Here, the parties did not evidence a mutual assent to the terms of an agreement. Accordingly, we hold that the court did not err in finding that an enforceable agreement had not been reached.

E.

Plaintiffs next take issue with the dismissal of the action without prejudice for failure to prosecute. "Trial courts possess inherent, common-law authority to control their dockets and the proceedings in their courts. Their authority is quite broad and includes the express authority to dismiss cases for failure to prosecute or to comply with the Tennessee Rules of Civil Procedure or the orders of the court." *Hodges v. Attorney Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000). We review such decisions under an abuse of discretion standard. *Id.* "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not allow an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

This case experienced multiple delays as a result of repeated motions to dismiss filed by Defendants, the removal of the action to federal court as a result of Defendants' erroneous insistence to include the TVA as a party, and the trial court's instruction upon remand to effectuate service of process for landowners whose property even remotely touched the suggested location of the easement. We acknowledge that these actions were not necessarily erroneous; however, they did result in extensive delays in litigation, for which Plaintiffs cannot be held at fault. Plaintiffs responded to each motion to dismiss, participated in federal proceedings at Defendants' insistence, followed the trial court's direction to effectuate service of process upon multiple landowners, and then participated in settlement negotiations in an attempt to resolve the action amicably.[4] Dismissal at this stage of the proceeding for failure to prosecute was against logic and reasoning and caused an injustice to Plaintiffs. Accordingly, we vacate the order of dismissal and remand for the empaneling of a jury of view to locate the requested easement and assess any corresponding monetary loss to the surrounding landowners.

---

[4] Defendants assert that Plaintiffs failed to appear at a hearing to assess damages for the landowners who were subject to a default judgment. Plaintiffs maintain that no such hearing occurred because they believed they had reached a settlement agreement. The court noted in its final order that this hearing was cancelled as a result of the settlement agreement.

## V.      CONCLUSION

For the reasons stated above, we vacate the order of dismissal and remand for further proceedings consistent with this opinion.  Costs of the appeal are taxed equally to the appellees, Lawrence and Kathy Slattery, SoKno Properties, LLC, and Robert E. Johnson.

_____
JOHN W. MCCLARTY, JUDGE